# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re**<br><br>DAVID S. RUCKDASCHEL<br>and TAMI S. RUCKDASCHEL,<br><br>**Debtors.** | **Bankruptcy Case**<br>**No. 06-40576-JDP** |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

        Stephen A. Meikle, Idaho Falls, Idaho, Attorney for Debtors.

        Janine Reynard, Office of the U.S. Trustee, Boise, Idaho.

        L.D. Fitzgerald, Pocatello, Idaho, Chapter 13 Trustee.

### *Introduction*

        On January 8, 2007, the United States Trustee ("the UST") filed a

Motion to Dismiss this Chapter 13[1] case.  Docket No. 28.  On January 23, 2007,

_____

    [1]  All references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and to the
Federal Rules of Bankruptcy Procedure, Rules 1001– 9036, as amended by the
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.
L. 108-9, 119 Stat. 23 (Apr. 20, 2005), effective October 17, 2005.

MEMORANDUM OF DECISION - 1

the Court conducted a hearing on the motion, after which it took the issues under advisement. After due consideration of the parties' submissions and arguments, as well as the applicable law, this Memorandum constitutes the Court's findings of fact and conclusions of law, and disposes of the motion. Fed. R. Bankr. P. 7052; 9014.

### *Facts*

Debtors Tami Sue Ruckdaschel and David Samuel Ruckdaschel ("Debtors") encountered financial difficulties after Mr. Ruckdaschel was arrested and the family car was seized on November 12, 2004. Affidavit of Tami Ruckdaschel at ¶ 2, Docket No. 32 (hereafter "Ruckdaschel Aff."). In response, Ms. Ruckdaschel sought assistance from Debt Reduction Services ("DRS") in Pocatello, Idaho, a non-profit credit counseling service. DRS helped Ms. Ruckdaschel prepare a budget and a plan to pay Debtors' unsecured creditors. *Id.* at ¶ 3. The term of the payment plan commenced on December 28, 2004, and continued for over a year, during which time Debtors paid over $7,000 to their creditors. *Id.* However, on October 21, 2005, Mr. Ruckdaschel was again incarcerated, and although payments continued through the payment plan, in April 2006, a creditor threatened to sue Debtors and garnish Ms. Ruckdaschel's wages. *Id.*

MEMORANDUM OF DECISION - 2

Ms. Ruckdaschel returned to DRS and discussed her situation with the same credit counselor with whom she had met before.  It was decided that bankruptcy was Debtors' best option.  Debtors were referred to, and Ms. Ruckdaschel met with, an attorney.  Debtors paid the attorney approximately $650 in two installments, but he allegedly refused to return their phone calls or set an appointment to meet with them again so that Debtors could deliver the information necessary for him to prepare their bankruptcy petition and schedules.  *Id*. at ¶ 4-5.  In July 2006, Debtors gave up on that attorney and sought other legal counsel.  *Id*. at ¶ 5.

In August 2006, Ms. Ruckdaschel met with Debtors' current attorney, Mr. Meikle.  He prepared Debtors' chapter 13 petition and schedules.  *Id*. at ¶ 6.  On October 4, 2006, Ms. Ruckdaschel signed the petition, and on October 10, 2006, Mr. Meikle sent the documents to her husband in prison, who signed them on October 13, 2006.  *Id*. at ¶ 7; Affidavit of Stacy Humphreys at ¶ ¶ 4-5, Docket No. 33 (hereafter "Humphreys Aff.").[2]  However, in order for Mr. Ruckdaschel to send the documents back to counsel, he was required to complete

---

[2]  The delay between the October 4 signing date and the October 10 mailing date appears to be due, at least in part, to the complexities of the prison mail system and the United States Postal Service.  The prison apparently does not allow a return envelope with postage affixed to be sent to prisoners, while the latter will only meter postage to be sent that same day.  Humphreys Aff. at ¶ 5.

MEMORANDUM OF DECISION - 3

additional paperwork and pay the mailing costs. *Id.* This caused further delay, and the signed bankruptcy petition was not received by Mr. Meikle's office until October 29, 2006. Ruckdaschel Aff. at ¶ 8; Humphreys Aff. at ¶ 6. The petition, schedules and related forms were electronically filed by counsel the following day, October 30, 2006. Docket Nos. 1-8.

On January 8, 2007, the UST filed a Motion to Dismiss alleging that Debtors were not eligible for bankruptcy relief, because they had not completed credit counseling within the 180 days preceding the filing of their petition as required by § 109(h)(1). Debtors filed a brief in opposition to the motion on January 19, Docket No. 36, and a supplemental brief on January 25, Docket No. 36.

### *Analysis and Disposition*

### **I**.

The provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which generally became effective in October of 2005, made widespread changes to the existing Bankruptcy Code. One of the additions is a new requirement that, in order to be eligible for bankruptcy relief, individual debtors obtain pre-bankruptcy credit counseling from an approved agency. The new statute, § 109(h)(1) provides:

MEMORANDUM OF DECISION - 4

> Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

In enacting this provision, Congress intended that individuals receive information about alternatives to, and the consequences of, filing for bankruptcy, so that bankruptcy court would be a debtor's last, rather than first, stop.  H.R.Rep. No. 109-31, at 2; 18 (2005), *reprinted in* 2005 U.S.C.C.A.N. 103-04.

To demonstrate compliance with the new credit counseling requirement, a debtor must file a certificate in his or her bankruptcy case which identifies the agency the debtor consulted, describes the credit counseling services provided, and which includes a copy of any debt repayment plan developed through the credit counseling service.  § 521(b).  Furthermore, as noted above, the certificate must evidence that the credit counseling was received by the debtor within the 180 days preceding the filing of the bankruptcy petition.

On October 30, the same day Debtors' case was commenced, they filed Certificates of Credit Counseling, indicating they had received counseling

MEMORANDUM OF DECISION - 5

services on April 26, 2006. Docket Nos. 3, 4. Based on this information, it appears Debtors completed their credit counseling 187 days prior to the petition filing date. Debtors' apparent failure to obtain *timely* credit counseling forms the basis for the UST's dismissal motion.

## II.

The UST argues that the Court has no discretion to expand the 180-day credit counseling window, and must apply the statute strictly. As a result, the UST contends Debtors are not eligible for bankruptcy relief, and their case must be dismissed.

Debtors, on the other hand, contend that, depending upon the facts, the Court may excuse a debtor from strict compliance with the 180-day time limit under § 109(h)(1), provided the particular circumstances of an individual case reflect that the Congressional intent behind the credit counseling requirement is not frustrated. Debtors argue that § 105(a)[3] is the statutory authority that allows the Court discretion to look past their failure to comply with § 109(h)(1) in this instance.

---

[3] Section 105(a) provides, in pertinent part, that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [11]."

MEMORANDUM OF DECISION - 6

Debtors contend that they actually exceeded the counseling requirement. They point out that, as Congress hoped they would, they not only received advice from a credit counselor about the alternatives to, and consequences of, filing for bankruptcy, but they also formulated and attempted to complete a private debt repayment plan with the help of the counseling service. They remind the Court that they were in fact repaying their creditors according to that plan, without resorting to bankruptcy, when Mr. Ruckdaschel's return to prison, and the collection efforts of one aggressive creditor, unexpectedly interrupted their ability to continue with plan payments. Only after making significant efforts to deal with their creditors outside the bankruptcy forum did Debtors ultimately resort to filing a bankruptcy petition, a step which their credit counselor agreed was necessary under the circumstances. Debtors insist that if the Congressional motive in adopting § 109(h)(1) was to ensure that potential bankruptcy debtors be exposed to information about debt relief options, and have access to nonbankruptcy debt repayment programs, that goal was certainly satisfied in their particular circumstances. Debtors maintain they were well-informed, made a good faith effort to complete a private debt repayment plan, and only filed for bankruptcy as a last resort. In short, Debtors insist the purposes of the new credit counseling requirement have been met.

MEMORANDUM OF DECISION - 7

Debtors also argue that their delay in filing their petition was not due to their own actions, and that had they realized they had missed an important deadline, they would merely have asked DRS to issue an amended certificate, as Ms. Ruckdaschel had actually returned to DRS for further counseling after April 26 and prior to October 30 when their petition was filed.[4]

The UST's response to Debtors' arguments is simple enough:  the law is the law.  In particular, the UST suggests that Congress, in its policy-making role, adopted the bankruptcy laws, and in particular, the eligibility requirements for bankruptcy relief.  Those requirements include pre-bankruptcy credit counseling.  Congress employed a time limit to ensure the information received at counseling was fresh in a debtor's mind prior to making the final decision to file a bankruptcy petition.  In short, the UST asks the Court to strictly apply the 180-day requirement without regard to the other facts Debtors have offered.[5]

### III.

Section 109(h)(1), while requiring credit counseling, is not written in absolute terms, but instead acknowledges there are exceptions to this requirement.

---

[4] No such amended certificates have been filed in this case, and so the Court expresses no opinion concerning the impact such a development would have on its disposition of the issues.

[5] The UST has not disputed any of the facts concerning Debtors' circumstances leading up to the bankruptcy filing.

MEMORANDUM OF DECISION - 8

Unfortunately for Debtors, none of the statutory exceptions apply under these facts.

The requirement of credit counseling is excused, at least temporarily, in three specific circumstances. First, under § 109(h)(2)(A), a debtor need not obtain pre-petition credit counseling if that debtor resides in a district in which there are no reasonably adequate agencies that can provide such services.[6] Such is not the case in this District. The UST has not made such a determination, and in fact, there is a list of over 20 approved credit counseling agencies in Idaho, including DRS, the agency utilized by Debtors. *In re Rodriguez*, 05.4 I.B.C.R. 102, 104 (Bankr. D. Idaho 2005).

Second, a debtor is excused from the credit counseling requirement if he or she certifies, to the satisfaction of the court, that "exigent circumstances" are present which merit a waiver of compliance. § 109(h)(3). However, to qualify for this temporary exemption, a debtor must demonstrate that he or she requested

---

[6] 11 U.S.C. § 109(h)(2)(A) provides:

> Paragraph (1) shall not apply with respect to a debtor who resides in a district for which the United States trustee (or the bankruptcy administrator, if any) determines that the approved nonprofit budget and credit counseling agencies for such district are not reasonably able to provide adequate services to the additional individuals who would otherwise seek credit counseling from such agencies by reason of the requirements of paragraph (1).

MEMORANDUM OF DECISION - 9

credit counseling services, but was unable to obtain them, during the five-day

period running from the date the debtor made the request.  § 109(h)(3)(A)–(B).[7]

Again, Debtors cannot satisfy the factual requirements to take advantage of this

exemption.  Debtors did not file a certificate with the Court alleging exigent

circumstances existed which prevented them from obtaining the credit counseling

services required by § 109(h)(1), nor have they attempted to demonstrate that they

unsuccessfully sought credit counseling services within the five day window prior

---

[7] 11 U.S.C. § 109(h)(3)(A) provides:

> Subject to subparagraph (B), the requirements of paragraph
> (1) shall not apply with respect to a debtor who submits to
> the court a certification that –
>> (i) describes exigent circumstances that
>> merit a waiver of the requirements of
>> paragraph (1);
>> (ii) states that the debtor requested credit
>> counseling services from an approved
>> nonprofit budget and credit counseling
>> agency, but was unable to obtain the
>> services referred to in paragraph (1) during
>> the 5-day period beginning on the date on
>> which the debtor made that request; and
>> (iii) is satisfactory to the court.
>
> (B) With respect to a debtor, an exemption under
> subparagraph (A) shall cease to apply to that debtor on the
> date on which the debtor meets the requirements of
> paragraph (1), but in no case may the exemption apply to
> that debtor after the date that is 30 days after the debtor
> files a petition, except that the court, for cause, may order
> an additional 15 days.

MEMORANDUM OF DECISION - 10

to filing their petition.  Instead, Debtors actually received the required counseling,

just not in a timely manner when measured against the statute.[8]

Finally, the Code provides a waiver of the credit counseling

requirement for debtors who are unable to complete couseling due to "incapacity,

disability, or active military duty in a military combat zone."  § 109(h)(4).[9]

Debtors do not argue that Mr. Ruckdaschel's predicament rendered him unable to

obtain the required counseling.  At least one bankruptcy court has held that a

debtor's incarceration is not a condition within the Congressionally defined

---

[8] For a comprehensive discussion of the temporary exemption from credit
counseling for "exigent circumstances," *see In re Rodriguez,* 05.4 I.B.C.R. at 105-109.

[9] 11 U.S.C. 109(h)(4) provides:
> The requirements of paragraph (1) shall not
> apply with respect to a debtor whom the
> court determines, after notice and hearing, is
> unable to complete those requirements
> because of incapacity, disability, or active
> military duty in a military combat zone.  For
> the purposes of this paragraph, in capacity
> means that the debtor is impaired by reason
> of mental illness or mental deficiency so that
> he is incapable of realizing and making
> rational decisions with respect to his
> financial responsibilities; and 'disability'
> means that the debtor is so physically
> impaired as to be unable, after reasonable
> efforts means that the debtor is so physically
> impaired as to be unable, after reasonable
> effort, to participate in an in person,
> telephone, or Internet briefing required
> under paragraph (1).

MEMORANDUM OF DECISION - 11

meaning of "disability" for purposes of § 109(h)(4). *In re Vollmer*, ___ B.R. ___,

2007 WL 541747 *2 (Bankr. E.D. Va. 2007) (citations omitted).   Moreover, it is

clear that Ms. Ruckdaschel was in no way incapable of obtaining timely

counseling.

Because none of the express exemptions to the credit counseling

requirement enumerated in the Code apply to Debtors, they must hope that the

Code allows the Court to exercise equitable discretion if they are to avoid

dismissal.

**IV**.

Debtors rely on § 105(a) to support their argument that the Court has

discretion to consider their particular circumstances when adjudging whether they

must strictly comply with the 180-day credit counseling requirement under

§ 109(h)(1).  Put another way, Debtors argue that the Court's decision to allow

them bankruptcy relief based upon counseling received 187 days prior to their

petition date amounts to "an order . . . that is necessary or appropriate to carry out

the provisions of [title 11]."

The Court is unwilling to read this provision as Debtors suggest it

should.  Section 105(a) does not grant bankruptcy courts the power to modify the

terms of a Code provision already in place, but only by its terms to "carry out" the

MEMORANDUM OF DECISION - 12

provisions of the Code.  *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th

Cir. 2002) (declining to use § 105(a) to authorize a new remedy for violation of

the discharge injunction, the court holds that "it is not up to us to read other

remedies into the carefully articulated set of rights and remedies set out in the

Bankruptcy Code");  *In re Farr*, 278 B.R. 171, 179 (9th Cir. BAP 2002) (deciding

that bankruptcy court had no equitable authority under § 105(a) to expand debtor's

claimed exemption; a bankruptcy court's equitable powers may only be exercised

within the confines of the Bankruptcy Code).

Properly construed, § 105(a) allows the bankruptcy court to issue

orders to supplement the terms of the Bankruptcy Code to ensure the purposes of

the statute are fulfilled.  But in this context, Congress has specified the time frame

within which debtors seeking relief under the Code must access pre-bankruptcy

credit counseling.  There is no "gap" to fill under these facts, and thus, no order of

the Court is justified.  This Court declines to read § 105(a) so broadly as to modify

the time limit in § 109(h)(1), nor to craft an additional equitable exception to that

provision, where Congress has not seen fit to do so expressly.

**V.**

But while § 105(a) does not allow the Court to exercise discretion in

applying § 109(h)(a), other courts have suggested such discretion is authorized

MEMORANDUM OF DECISION - 13

under various other provisions of the Bankruptcy Code. There is a decided split of opinion in the case law concerning this proposition. And while multiple citations are not usually enlightening, in this instance, a brief survey of the developing case law concerning this new BAPCPA provision is in order.

The vast majority of courts have construed the time requirements for credit counseling under § 109(h) strictly. These decisions, including, where helpful, their reasoning or comments included: *Hedquist v. Fokkena (In re Hedquist)*, 342 B.R. 295, 302 (8th Cir. BAP 2006) ("the new requirements in section 109(h) can, in some circumstances, create harsh results. But because those requirements are mandatory, bankruptcy courts have no discretion but to dismiss the case when the debtor fails to file a certification in compliance with its provisions"); *In re Carey*, 341 B.R. 798, 803 (Bankr. M.D. Fla. 2006) ("the requirements of § 109(h) are explicit and leave no room for a court to exercise discretion"); *In re Davenport*, 335 B.R. 218, 221 (Bankr. M.D. Fla. 2005) ("Recent decisions of other courts reflect the emerging view that a bankruptcy court cannot disregard any of the requirements, even in the name of 'equity'"); *In re Cleaver*, 333 B.R. 430 (Bankr. S.D. Ohio 2005) (the statute is unequivocal and allows for no other excuse or exception); *In re Wallert*, 332 B.R. 884, 890 (Bankr. D. Minn. 2005) ("the requirements of the statute are so clear and so exacting on

MEMORANDUM OF DECISION - 14

their face, and because they dovetail with a rational divination of congressional

intent, it simply is not open to the courts to depart from their express terms"). *See*

*also In re Ginsberg*, 354 B.R. 644, 647 (Bankr. E.D.N.Y. 2006); *In re Wilson*, 346

B.R. 59 (Bankr. N.D.N.Y. 2006); *In re Seaman*, 340 B.R. 698, 707-09 (Bankr.

E.D.N.Y. 2006); *In re Dansby*, 340 B.R. 564, 568 (Bankr. D.S. C. 2006); *In re*

*Mingueta*, 338 B.R. 833 (Bankr. C.D. Cal. 2006);  *In re Ross,* 338 B.R. 134

(Bankr. N.D. Ga 2006); *In re Sosa*, 336 B.R. 113 (Bankr. W.D. Tex. 2005); *In re*

*Childs*, 335 B.R. 623 (Bankr. D. Md. 2005) (an opinion joined in by all

Bankruptcy Judges in the District of Maryland); *In re Talib*, 335 B.R. 417,

*reconsideration den.,* 335 B.R. 424 (Bankr. W.D. Mo. 2005);  *In re LaPorta*, 332

B.R. 879, 884 (Bankr. D. Minn. 2005); *In re Watson*, 332 B.R. 740 (Bankr. E.D.

Va. 2005); and *In re Gee*, 332 B.R. 602 (Bankr. W.D. Mo. 2005).

Indeed, some bankruptcy courts have dismissed cases even when, as

here, the credit counseling was completed, but just a few days outside the statutory

180-day window.  *In re Williams,* ___ B.R. ___, 2007 WL 570233 (Bankr.

E.D.N.C. 2007) (case dismissed where credit counseling was completed 182 days

prior to filing); *In re Giles*, 2007 WL 259920 (Bankr. D. Utah 2007) (case

dismissed where credit counseling was completed 182 days prior to filing); *In re*

MEMORANDUM OF DECISION - 15

*Jones*, 352 B.R. 813 (Bankr. S.D. Tex. 2006) (case dismissed where credit

counseling was completed 190 days prior to filing).

Finally, this list would be incomplete without prominently noting

that in this District, Chief Judge Myers has held that § 109(h)(1)'s "new threshold

requirement for obtaining bankruptcy relief is mandatory and clear (*i.e.*, 'an

individual may not be a debtor unless . . . .')." *In re Rodriguez*, 05.4 I.B.C.R. at

104.

On the other hand, several bankruptcy courts have viewed § 109(h)

as allowing for judicial discretion depending upon the circumstances of individual

cases, including *In re Vollmer*, ___ B.R. ___, 2007 WL 541747 (Bankr. E.D. Va

2007) (credit counseling requirement waived by the court because debtor was

incarcerated at the time of filing his petition, and had no access to credit

counseling, telephone or Internet service); *In re Nichols*, ___ B.R. ___, 2007 WL

456635 (Bankr. S.D.N.Y. 2007) (court denied trustee's motion to dismiss on the

grounds that debtors' failure to comply with credit counseling requirement was

due to attorney error, and debtors completed credit counseling the same day they

filed their petition, and filed the certificate two days later); *In re Kernan*, ___ B.R.

___, 2007 WL 39204 (Bankr. D. Conn. 2007) (bankruptcy court stated, in dicta,

that "[h]ad congress intended the recent amendments to provide a

MEMORANDUM OF DECISION - 16

nondiscretionary dismissal of a case [where the credit counseling occurred one day after filing the petition], it would have included provisions to achieve that result"); *In re Parker*, 351 B.R. 790 (Bankr. N.D. Ga 2006) (court refused to dismiss case where debtor attempted to use his failure to receive credit counseling defensively when trustee sought to sell debtor's houseboat, holding that debtor had waived his right to argue he was ineligible to be a debtor when he actively participated in his own bankruptcy proceedings); *In re Hess*, 347 B.R. 489 (Bankr. D. Vt. 2006) (court had discretion under § 707(a) to not dismiss the case where debtor had received counseling from an agency not yet approved, and then received additional counseling from an approved agency eleven days after he filed his petition); *In re Bricksin*, 346 B.R. 497 (Bankr. N.D. Cal. 2006) (court declined to dismiss case on the grounds of equity, as debtors had set up a payment plan at a credit counseling agency and had been making payments up until the time they filed for bankruptcy); *In re Petit-Louis*, 344 B.R. 696 (Bankr. S.D. Fla. 2006) (noncompliance with § 109(h) waived where debtor spoke only Creole fluently and where there were no approved agencies with Creole-speaking counselors in the jurisdiction); *In re Star*, 341 B.R. 830, 832 (E.D. Va. 2006) (although debtor made no attempt to receive credit counseling, his incarceration was viewed by the

MEMORANDUM OF DECISION - 17

court as exigent circumstances, and for cause shown, he was given an additional 15 days to obtain the requisite counseling).

Of those decisions endorsing the exercise of discretion, two in particular warrant further discussion: *In re Hess* and *In re Bricksin*.  In each of those cases, the debtors had diligently attempted to obtain counseling, only to fall short in some fashion, as Debtors did in this case.

In *Hess*, the debtor received credit counseling from an agency known as "Consumer Credit Counseling Service of New Hampshire & Vermont" on December 14, 2005.  He filed his bankruptcy petition on March 2, 2006, well within the 180-day window.  Unfortunately, though, the credit counseling agency was not an authorized provider in Vermont on the filing date.  The bankruptcy court issued a notice of the deficiency to the debtor on the same day he filed his petition, and eleven days later the debtor attended another credit counseling session with an approved agency, and filed a certificate of compliance with the bankruptcy court.  After careful analysis concerning whether the debtor was eligible for bankruptcy relief, the bankruptcy court concluded:

> Based upon its understanding of the rules of statutory construction, the Court concludes that it has authority to exercise discretion when determining whether to dismiss a case based upon a debtor's failure to meet the eligibility requirement of § 109(h) in cases where to decline to exercise discretion would result in

MEMORANDUM OF DECISION - 18

> manifest injustice, first, because judicial discretion is
> permitted under both other subsections of the
> eligibility statute and the statute that effectuates
> dismissal of chapter 7 cases and, second, because
> Congress has not specifically circumscribed judicial
> discretion in connection with the credit counseling
> requirements (as it has in other provisions of
> BAPCPA).

*In re Hess*, 347 B.R. at 498.  The *Hess* court considered the totality of the

circumstances as required under § 707(a), and concluded that, under the particular

facts, dismissal was not justified.  *Id.*

The other case, *In re Bricksin*, is factually similar to the situation in

Debtors' case.  In *Bricksin*, the debtors encountered financial trouble and sought

help from a credit counseling service on October 19, 2004.[10]  The counselor

advised them to file for bankruptcy.  The Bricksins instead desired to repay their

debts, and embarked upon a payment plan arranged by the counseling service.

They made over $11,000 in payments pursuant to the plan before their money ran

out and they could no longer continue.  At that point, the debtors returned to the

credit counseling agency, who again advised them that bankruptcy was their best

option.

---

[10]  The court indicated that the credit counseling session was held on October 19,
2005, but a careful reading of the decision, especially footnote 3, suggests the *5* is a
typographical error, and the correct date is 200*4*.  *Id.* at 499.

MEMORANDUM OF DECISION - 19

On November 22, 2005, the Bricksins filed their bankruptcy petition. They did not file a certificate from the credit counseling agency. When the trustee sought to dismiss their case for non-compliance with § 109(h), the debtors again paid for and obtained credit counseling, and received a certificate of completion, dated December 22, 2005, one month to the day after filing their petition.

The *Bricksin* court noted that when read strictly, the debtors had not complied with the statutory requirements. *Id*. at 501. However, in declining to dismiss the debtors' case, the court stated:

> The Court finds that application of the statutory scheme to dismiss this case, as the Trustee urges, would produce a result at odds with Congressional intent. The intent behind these statutory amendments is to encourage debtors to seek alternatives to the bankruptcy process and to promote debtor awareness of the effects of a bankruptcy filing by requiring pre-petition credit counseling. Debtors had received extensive pre-petition credit counseling and then–during the 180-day period prior to filing for bankruptcy–were proceeding with their payment plan, and making very substantial payments to creditors. While failing to comply with the law's technical letter, the Debtors were clearly in compliance with its spirit. The Court finds that the Debtors' need for a bankruptcy filing was not and could not have been obviated by additional credit counseling. Debtors were keenly aware of the implications of the bankruptcy filing. Indeed, [the credit counseling

MEMORANDUM OF DECISION - 20

> agency] had advised the Debtors that their only viable
> option was to file for bankruptcy.
>
> While the credit counseling session attended by
> Debtors was held outside the 180-day period
> prescribed by the statute, the Court is persuaded that
> Debtors' participation in and performance under a debt
> repayment plan constitutes ongoing credit counseling
> sufficient to satisfy the statutory requirement on the
> individual and unusual facts of this case. . . . The Court
> finds that Debtors' completion of credit counseling,
> and then ongoing performance under the debt
> repayment plan within the 180-day period prior to
> filing, fulfills the spirit of the statutory requirement.

*Id*. at 502. The bankruptcy court concluded that it would be "inequitable for this

Court to hold that these Debtors' technical non-compliance with the law, despite

their very best efforts, warrants dismissal of this case . . . ." *Id.* at 503.

In summary, while the clear weight of cases find no room for the

exercise of judicial discretion based upon the individual circumstances of

particular bankruptcy cases when applying § 109(h), others conclude discretion is

allowed where dismissal would be unjust or absurd in light of the policies

underpinning the statute.

## VI.

The facts of Debtors' case, together with the division in the case law,

make the decision to dismiss a difficult one. But simply because the standard

adopted by Congress for determining eligibility for relief may seem unwarranted,

MEMORANDUM OF DECISION - 21

even counterproductive, when applied to particular facts, this Court cannot modify

that rule.  In short, while it is a harsh result, the Court will join those courts that

hold it has no discretion to excuse Debtors' failure to strictly comply with

§ 109(h)(1).

Of course, a bankruptcy court is a court of equity. *See, e.g., Young v.*

*United States*, 535 U.S. 43, 50 (2002); *In re Rains*, 428 F.3d 893, 907 (9th Cir.

2005).  However, the bankruptcy courts' equity powers do not license the Court to

rewrite statutes in favor of parties based on extenuating circumstances.  As the

Ninth Circuit stated, a bankruptcy court's " [equitable] powers are limited and do

not amount to a 'roving commission to do equity.'" *Saxman v. Educ. Credit*

*Mgmt. Corp., (In re Saxman)*, 325 F.3d 1168, 1175 (9th Cir.2003) (*quoting United*

*States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986)).  The Bankruptcy Code, in §

105(a), limits the equitable powers of bankruptcy courts to the issuance of any

order, process, or judgment that is necessary or appropriate to carry out the

provisions of Title 11.  Thus, to act, a bankruptcy court must locate its equitable

authority in the Bankruptcy Code.  *See Norwest Bank Worthington v. Ahlers,* 485

U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy

courts must and can only be exercised within the confines of the Bankruptcy

Code.").

MEMORANDUM OF DECISION - 22

The language of § 109(h)(1) is specific and precise in commanding that "an individual *may not* be a debtor . . . *unless*" the credit counseling requirement is satisfied. (emphasis supplied). Congress included no hint in this provision to indicate that the bankruptcy court was free to consider the particular situation of individual debtors, except when those circumstances fall within the confines of the three, specific statutory exemptions enumerated in the same section of the Code.[11]  If Congress intended that the bankruptcy courts have the power to vary the eligibility requirements, presumably § 109(h) would have preceded its instructions in the statute with the phrase "unless the court orders otherwise . . . ." The Code contains a number of provisions that include that specific language,[12] and the courts have interpreted such language to allow the exercise of discretion by the bankruptcy court to act independently.  *See e.g., Ruvacalba v.Munoz (In re Munoz)*, 287 B.R. 546, 552 (9th Cir. BAP 2002); *DeVore v. Marshack (In re DeVore)*, 223 B.R. 193, 198 (9th Cir. BAP 1998).  But § 109(h) does not contain

---

[11]  As the Supreme Court explained in *FCC v. NextWave Personal Communications, Inc.,* 537 U.S. 293, 302 (2003), "where Congress has intended to provide . . . exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly."

[12]  *See, e.g.*, 11 U.S.C. §§ 324, 327, 330, 349, 363, 364, 521, 552, 554, 704, 1107, 1108, 1304, 1326 and 1520.

MEMORANDUM OF DECISION - 23

this discretionary phrase.  The Court must therefore presume that Congress

intended no such license for discretion.[13]

In adopting § 109(h), as well as other provisions of BAPCPA,

Congress sent a strong message that those experiencing financial difficulties

should consider other alternatives for relief shortly before filing for bankruptcy.

The pre-bankruptcy credit counseling requirement, while perhaps of questionable

efficacy, is one way to meet this goal.[14]  The Court acknowledges that, arguably,

the purpose behind the rule adopted by Congress was satisfied in this case, because

after consulting the credit counselors, Debtors attempted through a debt-repayment

plan to work out their debt issues short of pursuing a bankruptcy discharge.  It is

understandably difficult to explain why, having been unsuccessful in paying their

---

[13]  In arguing that the Court has discretion, Debtors have not relied upon the language of § 707(a), which provides that the Court *may* dismiss a case for cause.  But even if § 109(h) does not clearly *require* dismissal, Debtors are given no safe haven from the UST's motion.  That Debtors are not eligible for relief undoubtedly constitutes adequate cause for dismissal, and they have not argued to the contrary.  *United States Internal Revenue Service v. Pattullo, (In re Pattullo)*, 271 F.3d 898, 900 (9th Cir. 2001); *Quintana v. Comm'r of Internal Revenue Serv. (In re Quintana)*, 915 F.2d 513, 518 (9th Cir. 1990).  The Court cannot in good conscience presume that because Congress allows for dismissal for cause in § 707(a), but does not command it, that it intended bankruptcy judges to override the specific instructions provided in § 109(h) concerning who may be a debtor in a bankruptcy case.

[14]  A study by a National Association of Consumer Bankruptcy Attorneys found that only 3.3% of all consumers who received credit counseling as required by the BAPCPA were able to utilize the debt management plans contemplated by Congress.  *In re Parker*, 351 B.R. 790, 799 n. 8 (Bankr. N.D. Ga. 2006).

MEMORANDUM OF DECISION - 24

debts, Debtors should have to receive yet another round of counseling before filing their bankruptcy petition.

But even if the strategy employed by Congress in implementing its policy is flawed, this is not a sufficient reason for a bankruptcy court to decline to enforce this rule. If there are defects in this policy, only Congress, not the courts, can repair them. While the 180-day requirement may be criticized, there is no basis to ignore it. The Court's role in this context is limited. Because the law is clear, the Court has no authority to employ equitable principles to excuse Debtors from the time requirements of § 109(h)(1). In other words, the statute speaks for itself: 180 days cannot mean 187 days.[15]

### Conclusion

Because Debtors' credit counseling was received 187 days prior to filing their bankruptcy petition, and not within the 180 days as required by § 109(h)(1), Debtors are not eligible for bankruptcy relief. None of the

---

[15]  Finally, the Court notes that even if it were to assume it could exercise some discretion in Debtors' favor, it is not completely clear that it should do so under these facts. Seen one way, Debtors' predicament essentially resulted from a mailing delay due to Mr. Ruckdaschel's incarceration. It simply took more time for him to sign and return the petition to his attorney for filing. Under the Code, the onus is on Debtors and their counsel to be certain that petitions are not filed until all eligibility requirements are met. To "look the other way" in this case would not only transgress a clear mandate from Congress, but could establish an ill-defined exception that would be difficult to fairly apply in later cases.

MEMORANDUM OF DECISION - 25

enumerated exceptions to the requirements that timely credit counseling be

received apply in this case, and the Code does not allow the Court any discretion to

take into account Debtors' individual circumstances.  This problem has been

timely raised by the U.S. Trustee's motion,[16] and because Debtors' lack of

eligibility for relief constitutes good cause, their bankruptcy case will be

dismissed.

   A separate order will be entered.

Dated:  March 20, 2007

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

   [16]  The Court expresses no opinion whether a request for dismissal of a
bankruptcy case based upon the debtor's lack of eligibility for relief under § 109 must be
seasonably raised, or may be waived.

MEMORANDUM OF DECISION - 26